UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARRYL YOUNG, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:07CV327MLM |
| ) | |
| AL LUEBBERS, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**

This matter is before the court pursuant to Petitioner Darryl Young's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. Respondent Al Luebbers filed a Response to the Order to Show Cause. Doc. 7. Petitioner filed a Traverse. Doc. 12. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 9.

**I.**
**BACKGROUND**

Petitioner pled guilty to first-degree burglary, Mo. Rev. Stat. § 569.160, first-degree sexual misconduct, Mo. Rev. Stat. § 566.090, and resisting arrest, Mo. Rev. Stat. § 575.150. The trial court sentenced Petitioner to concurrent terms of fifteen-years for first-degree burglary and one-year each for the remaining charges. Resp. Ex. A at 13-14.

On December 30, 2003, Officer Leslie M. Cooper completed a Pre-Hearing Report for the Missouri Department of Corrections Board of Probation and Parole (the "Parole Board"), which states that Petitioner was initially heard by the Board on January 25, 2001, and that he was scheduled for a reconsideration hearing on January 29, 2004. In her report, Officer Cooper stated that St. Louis Police Department records state, in regard to the offenses for which Petitioner was

incarcerated, that police were dispatched to a home where a burglary was in process; that upon arrival police were informed by the home owners that Petitioner "entered the home unannounced and was currently in the bathroom"; that police commanded Petitioner to leave the bathroom but he did not; and that Petitioner was maced and arrested. The report further states that when interviewed by police the victim said that Petitioner entered the home uninvited; that he subsequently made sexually explicit statements to her; that Petitioner tried to pull the victim's pants down; that the victim's seven year old daughter entered the room while this was taking place; that Petitioner "grabbed the girl and threw her into a chair while stating, 'you're next'"; that the victim took her daughter into another room and told her to call 911; that Petitioner "continued to accost the victim by pulling up her shirt and exposing her breasts and by engaging in other acts; and that while engaging in this conduct Petitioner stated, "I broke up with my girl and I'm going to have you tonight." Resp. Ex. F at 2.

The report also states that Petitioner admitted that at the time of the offense he was "very intoxicated and under the influence of cocaine"; that Petitioner had "a very substantial substance abuse history, using illegal substances since the age of 11"; that, while in the Farmington Correctional Facility, Petitioner "received two #11-Possession/Use of Intoxicating Substance (Marijuana) in 2000"; that Petitioner had not tested positive for substances since his last hearing; that it was the "officer's opinion that [Petitioner] [was] in need of further substance abuse treatment"; and that Petitioner "agreed that he could benefit from treatment although he has set up his own internal controls when it comes to substance abuse." Resp. Ex. F at 2-3, 5. The officer further stated in her report, among other things, that it was her opinion that Petitioner had not "fully addressed [his] substance abuse issues, because he had not had any type of treatment since 2000"; that she questioned whether or not Petitioner "has all the information and tools he need[ed] to stay substance free in the community"; that upon questioning Petitioner did not have a recovery plan for himself; that the

2

officer believed that the "Long Term Drug Treatment Program [would] give [Petitioner] the information and tools to set up a recovery plan so that [he] can be as successful in the community as he reports he would like to be"; that Petitioner's "institutional behavior and adjustment [had] improved tremendously over the last three years" and Petitioner "made some internal changes in his life, although this officer [felt Petitioner] could use more substance abuse treatment before being released in the community"; due to the seriousness of Petitioner's crime and his extensive substance abuse history, that the officer was *recommending that Petitioner be scheduled for release on July 28, 2006,* "with the special conditions of Long Term Substance Abuse Treatment Program, No Drinking and Substance Abuse Program"; and that this date was three years prior to Petitioner's Conditional Release Date. Resp. Ex. F at 5 (emphasis added).

The Parole Board disagreed with the recommendation of Officer Cooper and scheduled Petitioner for release from confinement on April 28, 2008, with the following special conditions of release: CRC work release, electronic monitoring, no contact with the victim's family, no contact with the victim, no drinking, a substance abuse program, and a sex offender program. Resp. Ex. I-K.

As stated by the Missouri appellate court:

> Mr. Young filed a petition for judicial review asking that the trial court find that MBPP abused its discretion in denying a sooner release date according to the guidelines and predicting release on the completion of MOSOP. He also alleged abuse of discretion concerning MBPP's reliance on a parole officer's recommendations because she was racially prejudiced against him. MBPP filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. In response, Mr. Young amended the petition, and the motion to dismiss was denied. Thereafter, at a court hearing, the State presented another motion to dismiss, which was granted. Mr. Young appeals.

Resp. Ex. E at 1-2. See also Resp. Ex. A.

The Missouri appellate court denied Petitioner's appeal in an opinion dated October 31, 2006. Resp. Ex. E.

In his §2254 Petition, filed on February 15, 2007, Petitioner raises the following issues:

**(1)** Petitioner was denied parole based on racial bias on the part of the parole officer;

**(2)** Petitioner is entitled to release under Missouri's parole guidelines.

Doc. 1.

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, Carlson, 470 F.3d 777, 783 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 262, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). "To obtain habeas relief, [a habeas petitioner] must be able to point to the Supreme Court precedent he thinks the [] state courts acted contrary to or applied unreasonably." Id. (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28

4

U.S.C. § 2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland

5

v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411).  See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent."  529 U.S. at 406.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).  It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case."  Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001).  Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable."  Id. at 793 (citing Williams, 529 U.S. at 410-11).  The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue."  Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

6

proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004)**.**

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 543 U.S. 1189 (2005). The court held in Brown that:

7

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

> [It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was

8

not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

## III.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

Additionally, the Eighth Circuit holds that a prisoner may not challenge the actions of a parole commission without first exhausting his administrative remedies. See Merki v. Sullivan, 853 F.2d

9

599, 601 (8th Cir. 1988). For a Missouri prisoner, that involves filing an appeal with the Missouri appellate court.

As set forth above, Petitioner sought review of the parole board's decision in the trial court; after the State filed a motion to dismiss Petitioner filed an amended petition for review; the State then filed a second motion to dismiss which the trial court granted. Petitioner filed for review of the trial court's decision with the Missouri appellate court. Resp. Ex. B. In this appeal Petitioner raised the following two issues:

> Point 1 - A second motion to dismiss is barred from relitigating an issue which has already been determined on its merits and was denied in a prior motion to dismiss by final judgment pursuant to the doctrines of res judicata, collateral estoppel and/or issue preclusion.
>
> Point 2 - The claim of racial prejudice and/or discrimination states a cause of action for which relief can be granted in a declaratory judgment action, and dismissal of said cause prior to completion of discovery was premature and an abuse of discretion by the trial court.

Resp. Ex. B at 1.

Thus, before the Missouri appellate court Petitioner did not raise the issues which he raises in his § 2254 Petition although he raised the issue of Ground 1 in support of his second point on appeal. Petitioner did, however, raise the issues of his § 2254 Petition in his original action filed with the trial court. Respondent does not argue that Petitioner has procedurally defaulted the issues which he raises in his § 2254 Petition. As such, in the interests of justice, the court will address Petitioner's § 2254 Petition on its merits.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Missouri appellate court issued its decision in regard to Petitioner's parole by Order dated October 31, 2006. Petitioner filed his § 2254 Petition on February 15, 2007. As such, the court finds that Petitioner's § 2254 Petition is timely.

10

# IV.
# DISCUSSION

**Ground 1 - Petitioner was denied parole based on racial bias on the part of the parole officer;**

**Ground 2 - Petitioner is entitled to release under Missouri's parole guidelines:**

Petitioner alleges that his constitutional rights were violated because the parole officer recommended his release be denied for racially discriminatory reasons and that his release date conflicts with Missouri law. In support of Grounds 1 and 2, Petitioner alleges that he, who is African-American, told the officer that he had a Caucasian fiancee and that he would be "paroling to her home"; that when he told the officer this her demeanor changed and that she made racially biased and prejudicial statements to Petitioner; that the officer made "prejudicial and biased statements to the Board in her report"; that psychological evaluations recommended Petitioner's release; and that the Board's decision is a "direct result of the aforesaid parole officer's racially biased and prejudicial statements"; and that if he is not released until April 28, 2008, he will "serve in excess of the 129 months of his term, far in excess of the Board guidelines."

In his Petition for Judicial Review, Petitioner argued that he "had the right to be considered eligible for parole release after serving 60 to 72 months of his sentence" and that the Parole Board did not follow its own guidelines in establishing his parole date and appropriate special conditions for release. Resp. Ex. A at 11.

To the extent the Missouri appellate court addressed the issue of Petitioner's Ground 1, the court held:

> Mr. Young's petition does not state a claim because the only mention of racial discrimination in the petition is the alleged discriminatory remarks of the parole office. Mr. Young fails to state how the recommendations were a result of prejudices, assuming that she made those remarks. To the extent that Mr. Young claims that the resulting discrimination is the reason for requiring participation in the MOSOP, his claim is meritless. MBPP can require prisoners to participate in whatever programs

it believes will ensure those prisoners will become law-abiding citizens. Mayorga v. Missouri, 442, F.3d 1128, 1131 (8th Cir. 2006).

Resp. Ex. E at 3.

The court will consider federal law applicable to Petitioner's Ground 1. 28 U.S.C. § 2254 may be invoked only on the ground that prisoner is in custody in violation of the Constitution or laws or treaties of the United States. Section 2254 is a proper vehicle for a state prisoner to attack the validity of his sentence. Otey v. Hopkins, 5 F.3d 1125, 1130 (8th Cir. 1993). Section 2254 is the proper vehicle for a state prisoner who challenges the denial of parole when such a challenge addresses the execution of the prisoner's sentence. See Crouch v. Norris, 251 F.3d 720, 723-24 (8th Cir. 2001).

In Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1 (1979), the Supreme Court held that there is no constitutionally protected interest in parole release pursuant to the mere existence of a *discretionary parole system*. There are constitutional limitations, however, once a parole system is established. Id. at 19. Thus, a parole board violates due process where parole is denied based on race. See Perry v. Sindermann, 408 U.S. 593 (1972), overruled, in part, on other grounds, Rust v. Sullivan, 500 U.S. 173 (1991).

Mo. Rev. Stat. § 217.690 provides, in relevant part, as follows:

1. When in its opinion there is reasonable probability that an offender of a correctional center can be released without detriment to the community or to himself, *the board may in its discretion* release or parole such person except as otherwise prohibited by law. All paroles shall issue upon order of the board, duly adopted.

2. Before ordering the parole of any offender, the board shall have the offender appear before a hearing panel and shall conduct a personal interview with him, unless waived by the offender. A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered a reduction of sentence or a pardon. An offender shall be placed on *parole only when the board believes* that he is able and willing to fulfill the obligations of a law-abiding citizen. Every offender while on

parole shall remain in the legal custody of the department but shall be subject to the orders of the board.

...

4. The board shall adopt rules not inconsistent with law, in accordance with section 217.040, with respect to the eligibility of offenders for parole, the conduct of parole hearings or conditions to be imposed upon paroled offenders. Whenever an order for parole is issued it shall recite the conditions of such parole.

(emphasis added).

The Eighth Circuit has held that Mo. Rev. Stat. § 217.690 provides that the Parole Board may determine that the serious nature of the inmate's offense requires that a longer term be served before parole release. Maggard v. Wyrick, 800 F.2d 195, 197 (8th Cir. 1986) (citing Parker v. Corruthers, 750 F.2d 653, 662 (8th Cir.1984)). The court further held that the language of § 217.690 stating that the Parole Board "may in its discretion" establishes that parole is "discretionary." Id. at 198. As such, the court held that this statute "does not create a protected liberty interest in parole." Id. (citing Gale v. Moore, 763 F.2d 341, 343 (8th Cir.1985) (per curiam); Green v. Black, 755 F.2d 687, 688 (8th Cir.1985)).

The court further held in Maggard:

> Our analysis, however, does not end there. Maggard's due process right to review his parole file is not contingent solely upon the statute. A protected liberty interest may also arise when "particularized standards or criteria guide the state's decisionmakers." Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) quoting Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 467, 101 S.Ct. 2460, 2465-66, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring); see also Parker v. Corruthers, 750 F.2d 653, 660 (8th Cir.1984). These particularized standards or criteria may be found in any of several forms, including the state's administrative code and "regulations, practices or customs" which "have been formally utilized through such devices as handbooks or inter-office memoranda or other standardized customs which limit the Board's discretion." Gale, 763 F.2d at 343; see also Green, 755 F.2d at 688.

In the present case, this court has not been advised of any such regulations, practices or customs although the Missouri legislature has mandated that "[t]he board shall adopt rules not inconsistent with law, in accordance with section 217.040, with respect to the eligibility of inmates for parole, the conduct of parole hearings or conditions to be imposed on parolees." Mo.Ann.Stat. § 217.690(4) (Vernon 1983). ... .

... In this case, [] in view of the reasons given for denial of parole, it is obvious that the Board was relying on an undisputed factual premise that the crime was serious and to grant release at this time would depreciate the seriousness of the crime.

Id. at 198-99.

Further, the Eighth Circuit has held in regard to the Missouri parole statute that:

A liberty interest arises if a statute, rule or policy contains "specific substantive predicates" and "explicitly mandatory language." Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). A statute that lists with specificity the requirements an inmate must satisfy to be paroled by its nature would engender a liberty interest in parole. Under the Missouri statute, however, parole release is "purely discretionary with the Board." Maggard v. Wyrick, 800 F.2d 195, 197 (8th Cir.1986).

Because the Missouri statutes regarding parole determinations do not specify particular instances in which a prisoner is entitled to parole, but instead give the Board "almost unlimited discretion," they do not create a liberty interest. Green v. Black, 755 F.2d 687, 688 (8th Cir.1985).

Ingrassia v. Purkett, 985 F.2d 987, 988 (8th Cir. 1993). See also Marshall v. Mitchell, 57 F.3d 671, 672-73 (8th Cir. 1995) ("This court has consistently held that the current Missouri [parole] statutes, standing alone, do not create a liberty interest protected by the due process clause.") (citations omitted).

First, the Missouri appellate court considered Petitioner's allegation that Officer Cooper made racially discriminatory remarks. The court concluded that even assuming, arguendo, that Officer Cooper made such remarks, the record does not reflect that Petitioner was denied parole based either on these remarks or based on Officer Cooper's alleged prejudices. In proceedings pursuant to 28

U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain, 464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. §2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)).

Further, parole under Missouri's parole statute is discretionary. Thus, in order for Petitioner to establish a constitutional violation by the denial of parole, he must establish that he was denied parole for racially discriminatory reasons. See Greenholtz, 442 U.S. 19; Perry, 408 U.S. 593. As set forth above, the Missouri appellate court concluded that Petitioner was not denied parole for racially discriminatory reasons. This factual finding is presumed to be correct. See Hall, 341 F.3d at 712; Lomholt, 327 F.3d at 752; Simmons, 299 F.3d at 942. Indeed, despite Petitioner's allegation to the contrary, Officer Cooper recommended that Petitioner be paroled. The Parole Board, not Officer Cooper, denied Petitioner parole and found that he be scheduled for release in April 2008. Moreover, it was the Parole Board that included a sexual offender program as a special condition of parole;

15

Officer Cooper did not make such a recommendation. Thus, Petitioner's argument that he was denied parole based on racially discriminatory grounds must fail and he was not denied his constitutional rights in this regard. See Hall, 341 F.3d at 712; Lomholt, 327 F.3d at 752; Simmons, 299 F.3d at 942; Robinson, 278 F.3d at 865. To the extent the Missouri court considered the issue of Petitioner's Ground 1, the court finds that the decision of the Missouri appellate court in this regard is not contrary to federal law and that it is a reasonable application of federal law. See Greenholtz, 442 U.S. 19; Perry, 408 U.S. 593; Ingrassia, 985 F.2d at 988; Maggard, 800 F.2d at 197-98. Additionally, in regard to Ground 1, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 1 is without merit and that relief on its basis should be denied.

Further in regard to Petitioner's claim in Ground 2 that he is entitled to release under Missouri's parole guidelines, as stated above, there is no constitutional right to parole under Missouri law. Maggard, 800 F.2d at 197-98. As explained in Blackburn v. Missouri Board of Probation & Parole:

> Our General Assembly conferred on the Board virtually limitless discretion in making parole determinations, and authorized the Board to promulgate and amend guidelines. The Board retains authority to modify its guidelines, and discretion to make release decisions outside the guidelines. The Board reserves its right to exercise its discretion in determining parole eligibility. The Board's guidelines do not set mandatory standards, but clarify the Board's exercise of discretion. The guidelines provide a flexible framework for the Board's exercise of its discretion.

83 S.W.3d 585, 588 (Mo. Ct. App. 2002) (citing Fults v. Missouri Board of Probation and Parole, 857 S.W.2d 388, 392 (Mo. Ct. App. 1993)).

Further, 14 MO ADC 80-2.020 states, in relevant part:

(1) Parole guidelines indicate the customary range of time to be served before release for various combinations of offense seriousness and offender characteristics and sentence length. The time ranges specified by the guidelines are established

specifically for cases with good institutional adjustment and program progress. Mitigating or aggravating circumstances may warrant decisions outside the guidelines.

Thus, the Parole Board may deviate from the guidelines on a case by case basis. Therefore, even if the Parole Board, arguendo, failed to follow its own rules, the failure to do so did not implicate Petitioner's constitutional rights. Under such circumstances Petitioner has not established grounds to support his claim that he was denied his constitutional rights as a result of the Parole Board's alleged failure to follow its own rules. See Perry, 408 U.S. 593; Robinson, 278 F.3d at 865; Maggard, 800 F.2d at 197-98; Blackburn, 83 S.W.3d at 588. Further, to the extent that the Missouri court considered the issue of Petitioner's Ground 2, the court finds that the decision in this regard is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the Missouri court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Ground 2 is without merit and that relief on its basis should be denied.

## V.
## CONCLUSION

For the reasons more fully set forth above the court finds that the issues raised in Petitioner's Grounds 1 and 2 are without merit and that Petitioner's § 2254 Petition should be dismissed. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, in its entirety; Doc. 1

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.

|  |  |
|---|---|
|  | /s/Mary Ann L. Medler |
|  | MARY ANN L. MEDLER |
| Dated this 14th day of August, 2007. | UNITED STATES MAGISTRATE JUDGE |